# EXHIBIT 1

# MANAGEMENT AGREEMENT

THIS MANAGEMENT AGREEMENT ("Agreement"), is dated effective as of November 1, 2019, and entered into by and among Radix Group International, Inc., dba DHL Global Forwarding an Ohio corporation with its principal place of business located in Plantation, FL ("Radix"), AEI Drawback Services Inc. dba DHL Drawback Services, a Texas corporation with its principal place of business located in Houston, TX ("AEIDS") and Micah McDonald, an individual residing in the State of Texas ("Manager")(together referred herein as the "Parties").

WHEREAS, Radix is the sole shareholder of AEIDS, a business engaged in the provision of duty drawback services, including the administration of programs for the recovery of customs duties, Superfund taxes and harbor maintenance fees, and similar and ancillary services, for and on behalf of customers ("Drawback Services");

WHEREAS, Deutsche Post AG ("DPDHL") is the parent company of Radix and is not a party to this Agreement;

WHEREAS, pursuant to the terms of the Agreement, the Manager is employed for the purpose of providing operational and management services ("Management Services") to AEIDS in performing the Drawback Services;

NOW, THEREFORE, in consideration of the mutual covenants, conditions and agreements herein, the Parties agree as follows:

1. **Authority and Power/Management Services.** Subject to the limitations and restrictions set forth in Section 2 herein, Manager will have full and exclusive authority and power to, and the Manager agrees to, take such actions, execute and deliver such documents and perform such other acts as may be deemed by the Manager to be necessary or advisable to manage the operations of and provide the Management Services to, AEIDS.

2. **Limits on Authority.** Notwithstanding any powers that the Manager may from time to time exercise under this Agreement, the Manager shall not perform or authorize any of the following acts without the prior written consent of Radix:

    a) to bind or obligate AEIDS with respect to a matter outside the scope of performing the Drawback Services;
    b) to merge or consolidate AEIDS with any other person or entity or agree to an exchange of interests;

1

c) to authorize any act that would make it impossible to perform the Management or Drawback Services or any act that would contravene any provision of AEIDS's articles of incorporation, by-laws or this Agreement;
d) to dispose of all or a substantial portion of the assets of AEIDS;
e) to enter into any transaction or arrangement with any other entity owned or controlled by the Manager or by a member of the Manager's immediate family;
f) to enter into a transaction or series of related transactions that would involve or require the commitment of, obligation to expend, repayment of, acquisition of assets with a cost of, or transfer by AEIDS of assets with a fair market value of more than $250,000;
g) to enter into an agreement to acquire the stock or business and assets of any other company or to otherwise change the corporate structure of AEIDS;
h) to hire any employees and/or consultants with expected total compensation in excess of $150,000 per annum without the express written consent of a Radix Manager (Alejandro Palacios) and US Head of Human Resources (Rich Dudek) ;
i) to file on behalf of AEIDS a voluntary petition in bankruptcy or a petition or answer of any nature seeking for AEIDS any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any statute, law, or regulation;
j) to procure and maintain in force insurance the Manager shall deem prudent to serve as protection against liability for loss and damage sustained in the course of performing the Drawback Services unless it is through the DPDHL group insurance program of which Radix is a part;
k) to open, maintain and close bank accounts and custodial accounts unless in banks participating in the cash pool and approved by DPDHL Corporate Treasury;
l) to borrow or otherwise become liable, directly or indirectly, in any amount, including by reason of a guaranty, except for a borrowing which the Manager reasonably believes is required for working capital of AEIDS and is done through DPDHL approved lending institutions, and after the Manager shall have first requested that Radix provide such working capital directly, and provided that any such amounts outstanding at any one time cannot exceed $2,500,000 in the aggregate;
m) to take or defend any legal action or otherwise engaging outside attorneys without the consultation with the US DHL Legal department.
n) to take any other material action not within the ordinary course of performing the Drawback Services.

3. **Compensation.** The Manager's compensation ("Management Fee") for rendering the Management Services to AEIDS shall be as follows:

a) Management Fee: The Manager shall receive a monthly Management Fee for each period during the defined Term of this Agreement, equal to all AEIDS earnings in the preceding month, before interest and taxes ("EBIT"), remaining after costs and payment of the fee paid to Radix as set forth herein. Such fee shall be paid monthly based on the previous month's results at the time of the financial month closing. Meaning the management fee will be included in each month's P&L report that is shared with DHL Global Forwarding Finance on the third working day of the next month.

b) Costs: All AEIDS costs excluding interest and taxes are charged against the Management Fee.
a) Radix Fee: Radix will receive 27% of gross revenue of AEIDS on a monthly basis.
b) In addition, should any changes occur in the management team of AEIDS, Radix reserves the right to renegotiate the Management Fee. Calculation of Taxes: DPDHL's Corporate Tax department in the United States shall be responsible for the calculation of all income taxes, including the Texas franchise tax, and shall directly make any tax payments on behalf of AEIDS.
c) Within thirty (30) days of the close of the fiscal year of AEIDS the Manager shall reconcile the monthly calculations of the Management Fee gross revenues as reflected in the Audited Financial Statements.

4. **Term and Renewal.** The term of this Agreement shall be for three (3) years from the Effective Date ("Original Term") unless terminated sooner as set forth herein. Upon the expiration of the Original Term, this Agreement shall continue for an additional three (3) year period ("Renewal Term") unless the parties otherwise mutually agree in writing.

5. **Termination.** This Agreement may be terminated as follows:

a) **With Cause.** AEIDS may terminate this Agreement at any time for "Cause." As used herein, the term "Cause" shall include, but shall not be limited to, the following: (i) theft, fraud, dishonesty, gross negligence or willful malfeasance by the Manager in connection with the performance of their duties; (ii) a material breach or failure to fulfill and perform the Manager's duties hereunder unless such breach or failure is cured to the reasonable satisfaction of AEIDS within thirty (30) days after written demand from AEIDS; (iii) Manager's conviction of a felony or a crime involving moral turpitude; (iv) the Annual Pro-F orma Pre-Tax Profit of AEIDS shall be less than 75% of the Target Return for two (2) consecutive years. The Target Return for each year will be agreed between the parties before 31 December of the preceding year.
A termination of this Agreement by voluntary resignation or retirement of Manager shall be treated as a termination for Cause in the manner provided in this Section.

b) **Without Cause.** AEIDS may terminate this Agreement at any time and for any reason, upon one hundred twenty (120) days prior written notice. Manager will be entitled to receive payment of accrued earnings on a year-to-date basis calculated from January 1 to date of termination.

In case of termination without cause, AEIDS waives the Noncompetition cause 14(a) since there will be no prohibition of employment, and the Non-solicitation clause remains in effect as per 14(b).

c) **Termination for Death or Disability.** This Agreement will terminate immediately upon the death or Disability of Manager. The term "Disability" shall mean Manager's inability, due to physical or mental incapacity (determined by a licensed physician reasonably acceptable to the Manager), to perform the essential functions of his job for an aggregate of 150 days during any twelve (12) consecutive month period.

6. **AEIDS Funds.** Manager shall ensure that any funds received by Manager, or an agent of Manager, on behalf of AEIDS shall, immediately after such moneys have been received, be deposited into a bank account in the name of AEIDS. The Manager and AEIDS agree to open and use an account with a bank designated by Radix. The Manager and AEIDS also agree to onboard any new business into the account designated by Radix. AEIDS will also seek to transition all existing accounts into the inhouse bank account designated by Radix, through a coordinated commercial effort with Radix. Neither Manager, nor an agent of Manager, shall withdraw any funds from any bank account in the name of AEIDS, except in the course of conducting the Management Services. Manager shall not commingle any of AEIDS's funds with any of their own funds. All business operating expenses of AEIDS shall be appropriately charged to, be an expense of, and be payable by AEIDS.

7. **Reporting Requirements.** The Manager shall furnish to Radix, on the fifteenth day of each month, a written report providing in reasonable detail information concerning the prior month's operations and financial results in accordance with DPDHL Group Accounting Guidelines, which shall include, such prior month's unaudited profit and loss statements and balance sheet. In addition, the Manager shall furnish to Radix, within thirty (30) days after the end of each fiscal year annual audited financial statements of AEIDS, audited by the independent public accountants of AEIDS. The cost of such audit shall be the sole responsibility of AEIDS. The Manager shall be available for consultations and meetings with Radix shall fully disclose to Radix all matters related to the Management Services. On a monthly basis the status of the key internal controls will be accurately reported using the standard corporate tools and standards and on an annual basis will participate in balance sheet and financial reviews as determined by Radix.

8. **Access to Information.** Upon reasonable notice and during regular office hours, Radix, and any of its directors, officers and Affiliates, and their representatives, shall have access to the facilities, personnel and books and records of Manager and AEIDS to audit Manager's performance of their obligations required under this Agreement. Such access shall include: (i) visiting the facilities, (ii) discussions with the Manager; (iii) inspection of all books and records of the Manager and/or AEIDS, and (iv) such other reasonable access as Radix shall request.

9. **Books and Records.** The Manager agrees to keep accurate and complete books, records and computer files relating to Management Services provided to AEIDS pursuant to this Agreement for a period of five (5) years from the date of completion of the performance of the Management Services.

10. **Dividends and Capital Structure.** Radix in its sole discretion is responsible for the declaration of dividends and any changes in capital structure on behalf of AEIDS.

4

11. **Confidential Information/Intellectual Property.** Manager acknowledges that, both during and after the Term of this Agreement, Manager shall not, except as may otherwise be required by law, directly or indirectly disclose to any third person or entity, or use or cause to be used in any manner adverse to the interests of AEIDS or any Affiliate or parent company thereof, any Confidential Information (as defined below). Manager agrees that, upon the termination or expiration of this Agreement, all tangible Confidential Information and duplicates thereof in the possession or control of Manager, in any form or format including, without limitation, written, visual, audio, electronic or magnetic formats, shall be returned to AEIDS and shall not be retained by Manager or furnished or communicated to any third party in any form whatsoever. The term "Confidential Information" shall include but not be limited to information disclosed to Manager or known by Manager as a consequence of this Agreement about AEIDS's or such Affiliate or parent company's employees, directors, officers, partners, shareholders, advertising methods, public relations methods, business plans, processes, trade information, methods and forecasts, customer, customer and vendor lists, finances, trademarks, trade secrets and other intellectual property and any other information which manager should reasonably understand to be confidential.

Confidential Information does not include information which (i) was or becomes generally available to the public other than as a result of an act or omission in violation of this Section by the Manager, (ii) was or becomes available to the Manager on a non-confidential basis from a source other than AEIDS or any Affiliate thereof, (iii) was already known to the Manager at the time of receipt thereof without legal restriction as to confidentiality thereof, or (iii) is required to be disclosed to comply with applicable laws or regulations, or with a court or administrative order, provided that the Manager provides AEIDS and Radix with reasonable prior written notice of such intended disclosure. The provisions of this section shall survive through the fifth anniversary of the termination of this Agreement.

The parties also agree that all intellectual property, know-how, trade names, or trademarks developed or produced by the Manager, its partners or employees during the Term shall be the property of AEIDS.

12. **Compliance with Regulations.** Manager represents and warrants that Manager will comply with all applicable laws, rules, regulations, treaties and ordinances in connection with performance of the Management Services. Manager shall provide Radix AEIDS with such documents and other supporting materials as Radix may reasonably request to evidence Manager's compliance with this Section

13. **DP DHL Code of Conduct, Anti-Corruption and Business Ethics Policy and DGF Travel and Entertainment Policy.** Manager hereby represents that he has received, and is familiar with, the DPDHL Supplier Code of Conduct and the DPDHL Anti-Corruption and Business Ethics Policy, and the DGF Travel and Entertainment Policy, all attached hereto as Exhibit 1. Manager hereby covenants and agrees to abide, and to ensure that all employees, affiliates, assigns and subcontractors of AEIDS, abide with the terms of the Policies and with any additional standards and guidelines, which may be provided by DPDHL from time to time. Manager also agrees to comply with all required compliance training mandated by DPDHL at no cost to Manager. Any breach of the obligations stipulated in this Section will be considered a material breach of this Agreement.

14. **Manager's Noncompetition/Non-solicitation with AEIDS.**

a) Except as provided for herein, during the Term and for a period of three (3) years thereafter (the "Covered Period"), the Manager agrees not to engage in any Competitive Activity with AEIDS or any AEIDS Affiliate. The term "Competitive Activity" shall mean the following: (i) providing of Duty Drawback Services, other than on behalf of AEIDS or one or more Affiliates of AEIDS, to any Customer (as hereinafter defined); (ii) serving as an officer, director, member, manager, employee, consultant, advisor, agent or representative or otherwise be associated in any other capacity, with any person, corporation, partnership, limited liability company, sole proprietorship, association or other business enterprise engaged in the provision of Duty Drawback Services (each a "Competitive Enterprise"); or (iii) owning or acquiring, directly or indirectly, any interest in any Competitive Enterprise. AEIDS and its affiliates acknowledge and agree that nothing contained in this Agreement shall be interpreted to prohibit or preclude Manager from managing AEIDS or from owning less than 5% of the shares or other ownership interest of a public company listed on a major exchange or on NASDAQ.

b) Except as provided for herein, and during the Covered Period plus two (2) years thereafter, the Manager agrees not to solicit or induce any partner, stockholder, principal, director, officer, employee, agent or other representative of AEIDS or one or more Affiliates thereof to leave the employ or retention of AEIDS or such Affiliate or hire any of the foregoing, persons and/or request or advise, explicitly or implicitly, any Customer of AEIDS, or any of AEIDS's agents to withdraw curtail or cancel its business relationships with AEIDS or any Affiliate thereof, or otherwise to provide Duty Drawback Services to any Customer. The Manager further covenants and agrees that it shall not directly or indirectly interfere with any customer or business relationship of AEIDS or any Affiliate thereof, or induce or assist anyone in inducing in any way any employee of AEIDS or any Affiliate thereof to resign from or sever employment with, or to breach an employment contract with, AEIDS or such Affiliate.

The term "Customer" shall include any person who is customer of the AEIDS or an Affiliate thereof and any prospective customer to whom the AEIDS or an Affiliate thereof has made a presentation (or similar offering of services) during the six (6) month period prior to the date of termination of this Agreement or who was a customer during the twelve (12) month period prior to such date of termination.

6

19. **Indemnification.** The Manager hereby agrees to defend, indemnify and hold harmless AEIDS, its directors, officers, employees, agents and Affiliates from and against any and all loss, liability, claims, litigation, damage, penalties, actions, demands and expenses arising out of, connected with or related to (i) any willful breach by the Manager, or willful failure of the Manager to comply with any of its covenants or obligations under this Agreement and (ii) any willful violation of federal, state or local laws or regulations in connection with the performance of the Management Services. This obligation to indemnify shall include reasonable attorneys' fees and investigation costs and all other reasonable costs, expenses and liabilities incurred by such indemnified party or its counsel from the first notice that any claim or demand is to be made or may be made. The provisions of this Section shall survive the Term of this Agreement.

20. **Notices.** All notices, requests, demands and other communications made with respect to this Agreement shall be in writing and personally delivered or sent by registered or certified mail, postage prepaid, or by telefax or prepaid courier service, and shall be deemed to be effective on the day that such writing is delivered with receipt confirmed or if given by registered or certified mail, three (3) days after being deposited in the mails. All such notices shall be addressed as follows:

If to AEIDS :
AEI Drawback Services, Inc.
1210 South Pine Island Road
Plantation, FL 33324
ATTN: Legal Department

with a copy to:
Radix Group International, Inc. d/b/a
DHL Global Forwarding
ATTN: Dagmar Hennes
CFO DGF Americas
1801 NW 82nd AVE
Miami, FL 33126

If to Manager, to:

Micah McDonald
627 Rutland St, #2
Houston, TX 77007

Telephone: (832)248 5650
Facsimile: (281) 391-0582

With a copy to:
Campbell & Riggs, P.C. at the above address

Such alternative address may be designated by either party by providing the other party with written notice thereof.

21. **Assignment: Successors and Assigns.** Neither party hereto may assign its rights hereunder without the prior written consent of the other party.

22. **Entire Agreement; Amendments.** This Agreement, contains the entire understanding of the parties hereto with regard to the subject matter contained herein, and supersedes all prior agreements (oral or written), discussions, understandings or intents between or among any of the parties hereto. The parties hereto, by mutual agreement in writing, may amend, modify and supplement this Agreement.

23. **Waivers.** No failure or delay in requiring strict compliance with any obligation of this Agreement (or in the exercise of any right or remedy provided herein) shall constitute a waiver or modification of any such obligation, requirement, right or remedy or preclude exercise of any such right or remedy or the right to require strict compliance with any obligation set forth herein. No approval or consent of a party shall be effective unless in writing and signed by an authorized representative of such party, and such party's consent or approval may be withheld for so long as the requesting party is in default of any of its obligations under this Agreement.

24. **Headings.** The headings used throughout this Agreement are used for convenience only, and do not modify or affect the text to which they relate.

25. **Partial Invalidity.** Wherever possible, each provision hereof shall be interpreted in such manner as to be effective and valid under applicable law, but in case any one or more of the provisions contained herein shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality -or unenforceability shall not affect any other provisions of this Agreement, and this Agreement shall be construed as if such invalid, illegal or unenforceable provision or provisions had never been contained herein,

26. **Execution of Counterparts.** This Agreement may be executed in one or more counterparts, each of which shall be considered an original instrument, but all of which shall be considered one and the same agreement.

27. **Law and Venue.** Any dispute arising between the parties shall be governed by the laws of Florida (USA) without regard to its conflict of law provisions. The courts of Florida shall have exclusive jurisdiction.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

**Agreed to by:**

For: Radix Group International, Inc. d/b/a DHL Global Forwarding

Name: <u>Alejandro Palacios</u>

Signature: _____

Date: __11/05/2019__

For: AEIDS

Name: <u>Micah McDonald</u>

Signature: _____

Date: __10/29/2019__

For: Micah McDonald

Name: <u>Micah McDonald</u>

Signature: _____

Date: __10/29/2019__

**IN WITNESS WHEREOF,** the parties have executed this Agreement as of the date first above written.

**Agreed to by:**

For: Radix Group International, Inc. d/b/a DHL Global Forwarding

Name: <u>Alejandro Palacios</u>

Signature: *[signed]*

Date: 11/05/2019

For: Radix Group International, Inc. d/b/a DHL Global Forwarding

Name: <u>Dagmar Hennes</u>

Signature: *D. H[signed]*

Date: 11/05/2019

**For:** AEIDS

Name: <u>Micah. McDonald</u>

Signature: _____

Date: _____

**For:** Michah McDonald

Name: <u>Micah McDonald</u>

Signature: _____

Date: _____

9